Filed 9/3/15  Moses R. v. Super. Ct. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MOSES R., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF SANTA CLARA COUNTY, <br><br> Respondent, <br><br> SANTA CLARA COUNTY DEPARTMENT OF FAMILY & CHILDREN'S SERVICES, <br><br> Real Party in Interest. | No. H042404 <br> (Santa Clara County <br> Super. Ct. Nos. 114 JD22691, <br> 114 JD22692 & 114 JD22693) |

Petitioner Moses R. (the father) seeks writ relief from the juvenile court's order terminating his reunification services, scheduling a Welfare and Institutions Code section 366.26[1] hearing, and reducing his visitation with his three children to once a month.  He contends that the juvenile court erred in terminating services because there was not substantial evidence that he had not progressed on his case plan, and the court failed to consider the fact that his incarceration created barriers to his participation in services.  The

---

[1]     Subsequent statutory references are to the Welfare and Institutions Code.

father claims that the juvenile court erred in reducing his visitation because the court did not make a detriment finding. We reject his contentions and deny his petition.

## I. Background

Sylvia E. (the mother) and the father have three children together. In July 2014, the mother gave birth to their youngest child, J.R. Both J.R. and the mother tested positive for methamphetamine at the time of J.R.'s birth. The mother admitted that she had been using methamphetamine for seven years. The father had recently been released from jail when J.R. was born. He admitted that he was a frequent user of methamphetamine and an alcoholic. The mother and the father had used methamphetamine together during her pregnancy with J.R.

The father's brother reported that the father was prone to violence when he was under the influence. The father had been serving a previous jail sentence when their eldest daughter, I.R., was born in September 2013. Their son, M.R., had been born in June 2012. The mother had always been the primary caretaker for the children, and the father had provided no support for them. The family had been living with the father's father, who was a heroin addict and used drugs frequently. Many of the father's family members had mental health issues, and the father "would often see and hear things that were not there . . . ." The father's criminal history included convictions for driving under the influence, theft, battery, and assault with a deadly weapon. He was on probation and required to attend domestic violence classes, drug test, attend AA, and engage in drug rehabilitation. He had not been compliant with the terms of his probation, and he was incarcerated again shortly after J.R.'s birth.

The children were detained in July 2014, and the Santa Clara County Department of Family and Children's Services (the Department) filed petitions under section 300, subdivision (b) (failure to protect) as to all three children. In August 2014, the mother and the father submitted the matter on the petitions and the social worker's report, and the court

2

found the petitions true. At the October 2014 dispositional hearing, the children were removed from parental custody and placed in foster care. In early November, J.R. was moved to the same concurrent foster home as the other two children. The two older children had developmental delays, but all three children thrived in their concurrent foster home.

The father's case plan included a parent orientation class, a parenting class, counseling or psychotherapy, random weekly alcohol and/or drug testing, a substance abuse program, a substance abuse assessment, an aftercare program, a relapse prevention program, and a 52-week batterer's intervention program. The father was granted supervised visitation with the children twice a week for two hours. However he told the social worker that he did not want the children to visit him while he was incarcerated. He was ineligible to participate in programs in jail due to his classification as a gang member. However, he told the social worker that he hoped to participate in programs after his release.

The father was released from jail on October 8, 2014, and he began visiting the children. When he did visit with the children, the visits were usually positive, but he missed many of his scheduled visits with the children. He also missed most of his required drug tests, and, in early November 2014, he admitted that he had relapsed. In November and December 2014, the social worker several times observed the father talking to himself on the sidewalk, and the father told her that he was "hearing voices that were telling him to do 'bad things,'" and that he was "'not able to make'" the voices stop. The father told the social worker that he "has been having mental health issues which include schizophrenic episodes and suicide ideations that he is currently addressing with the mental health resources that were provided to him." However, the father did not obtain any mental health services. The father tested positive for methamphetamine and marijuana in December 2014, and he was arrested for violating his probation. He remained incarcerated throughout the remainder of the proceedings. The father "made minimal progress on his

3

case plan." He briefly began attending parenting classes, but he did not complete them. He did not attend parent orientation, made no attempt to obtain therapy, did not consistently drug test, did not participate in the batterer's intervention program, and did not attend a drug treatment program.

At the June 2015 six-month review hearing, the Department recommended that the court terminate services for the mother but extend services for another six months for the father. The father had been in contact with the social worker on a weekly basis since his December 2014 arrest, but he had had no contact with the children since December 18, 2014. He was engaging in some programs in jail and had been accepted into the "PACT Visitation program" in May 2015. He had completed the "three R's program." The PACT program would allow him to visit the children while in jail. He was scheduled to begin visiting the children once a week sometime in mid-June 2015. The father expected to be released from jail in December 2015.

The social worker testified at the hearing that the father had "done everything that he needed to do and has been able to do during his incarceration." But when he was not incarcerated, he had not made any progress on his case plan. He was still "hearing voices" and had not obtained mental health services. Although he had told the social worker that he was "open to receiving" such services, he made no effort to obtain available mental health services in jail.

The Department argued at the hearing that "inquiry must be made considering the particular barriers to an incarcerated parent's access to court-mandated services," and it asserted that the father's incarceration limited his access to services. The father's attorney argued that the court was required to extend services because "the barriers of incarceration" precluded the father from participating in services. The children's attorney asked the court to terminate services to the father and reduce his visits to once a month. She pointed out that the father had not sought treatment for his mental health issues while in jail despite the

4

availability of those services in jail. The children's attorney also noted that, when the father was not in jail, he had failed to significantly participate in any services.

The court found that the father had made "minimal" progress on his case plan, that he had not "demonstrated the capacity or the ability" to fulfill his case plan, and that there was no reasonable probability that the children could be returned within six months. It terminated the father's services and reduced the father's visits to once a month "because the Court terminated services, and the Court does not believe that it is in the best interest of the children to continue the visitation any more frequently than one time a month." The court set a section 366.26 hearing for October 5, 2015 and directed the Department's counsel to prepare the order. The court's July 2015 written order explicitly stated that the court had "tak[en] into account the barriers to the incarcerated parent's access to court-mandated services and ability to maintain contact with the children." The father timely filed a notice of intent to file a writ petition challenging the court's order.

## II. Discussion

### A. Termination of Services

The father claims that the juvenile court erred in terminating his services because substantial evidence does not support the court's finding that he had failed to make substantial progress on his case plan and the court failed to make a "specific finding" that it had considered barriers to his participation in services created by his incarceration.

At the six-month review hearing, "the court shall order the return of the child to the physical custody of his or her parent or legal guardian unless the court finds, by a preponderance of the evidence, that the return of the child to his or her parent or legal guardian would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child. . . . The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental. In making its determination

5

[whether return would be detrimental], the court . . . shall consider the efforts or progress, or both, demonstrated by the parent or legal guardian and the extent to which he or she availed himself or herself to services provided, taking into account the particular barriers to an incarcerated . . . parent's . . . access to those court-mandated services and ability to maintain contact with his or her child."[2]  (§ 366.21, subd. (e).)  "If the child was under three years of age on the date of the initial removal, . . . and the court finds by clear and convincing evidence that the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan, the court may [at the six-month review hearing] schedule a hearing pursuant to Section 366.26 within 120 days."[3]  (§ 366.21, subd. (e).)

---

[2]    The father cites language in section 361.5, subdivision (a)(3).  This subdivision provides that reunification services "may be extended up to a maximum time period not to exceed 18 months after the date the child was originally removed from physical custody of his or her parent or guardian if it can be shown, at the hearing held pursuant to subdivision (f) of Section 366.21, that the permanent plan for the child is that he or she will be returned and safely maintained in the home within the extended time period.  The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period or that reasonable services have not been provided to the parent or guardian.  In determining whether court-ordered services may be extended, the court shall consider the special circumstances of an incarcerated or institutionalized parent . . . , including, but not limited to, barriers to the parent's or guardian's access to services and ability to maintain contact with his or her child. . . .  If the court extends the time period, the court shall specify the factual basis for its conclusion that there is a substantial probability that the child will be returned to the physical custody of his or her parent or guardian within the extended time period."  (§ 361.5, subd. (a)(3).)

We cannot see how section 361.5, subdivision (a)(3) applies here.  It explicitly states that the court "shall extend the time period only if" reasonable services were not provided or there is a substantial probability that the child will be returned within the extended period.  The father does not contend that either of these circumstances was shown.  In any case, the requirement that the court consider barriers to participation in a parent's case plan created by the parent's incarceration appears in both section 366.21, subdivision (e) and section 361.5, subdivision (a)(3). Neither section requires an express finding in connection with that consideration.

[3]    "If, however, the court finds there is a substantial probability that the child . . . may be returned to his or her parent or legal guardian within six months or that reasonable

6

The father claims that there is no evidence that he "failed to participate regularly and make substantive progress" on his case plan. " 'We review an order terminating reunification services to determine if it is supported by substantial evidence. [Citation.] In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." [Citation.]' [Citation.]" (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028.)

The father complains that the juvenile court expected him "to be perfect." In his view, he was "slow to get started on his case plan," but "once he became incarcerated, he availed himself of every program" available at the jail. He minimizes his failure to obtain mental health treatment on the ground that "mental health services" were not part of his case plan.

The father views the record in a light most favorable to him, but we must review the record in the light most favorable to the court's findings. During the 11 months between the detention of the children and the six-month review hearing, the father made virtually no progress on his case plan. His very few visits with the children occurred during a brief two-and-one-half-month period in the fall of 2014 when he was not in custody, and even during that period his visits were inconsistent. He started but did not complete parenting classes, did not attend parent orientation, made no attempt to obtain psychotherapy, did virtually no drug testing, did not participate in a batterer's intervention program, and did

services have not been provided, the court shall continue the case to the 12-month permanency hearing." (§ 366.21, subd. (e).) The father does not claim that there was a substantial probability that the children could be returned to his custody within six months. Indeed, it would have been impossible for this to occur since he was not due to be released from his incarceration within that period. Nor does he claim that the Department failed to provide reasonable services.

not attend a drug treatment program. Although the social worker testified that the father had done what he was able to do in the jail, there was no evidence that he engaged in any program that met any of the requirements of his case plan. His failure to obtain mental health services, despite the availability of those services in the jail and his obvious need for such services, was particularly telling. His case plan required him to obtain psychotherapy, so it is not true that mental health services were not part of his case plan. The record contains substantial evidence supporting the juvenile court's finding that the father had failed to "participate regularly and make substantive progress" on his case plan.

We find no merit in the father's claim that the juvenile court erred by failing to make a "specific finding" that it had considered barriers to his participation in services created by his incarceration. Even if the statute required an express finding, which it does not, the juvenile court's written order made precisely such an express and specific finding. The juvenile court did not err in terminating the father's reunification services.

## B. Reduction of Visitation

The father claims that the juvenile court abused its discretion in reducing visitation without a detriment finding.

"In any case in which the court orders that a hearing pursuant to Section 366.26 shall be held, it shall also order the termination of reunification services to the parent or legal guardian. The court shall continue to permit the parent or legal guardian to visit the child pending the hearing unless it finds that visitation would be detrimental to the child." (§ 366.21, subd. (h).)

The juvenile court's previous order had permitted the father to visit the children on a weekly basis, but he had visited the children only during a couple of months of the nearly year long dependency and even then only inconsistently. He had not visited the children at all since December 2014. These very young children, who were thriving in their concurrent foster home, had no significant relationship with the father, who they had rarely

encountered. The court was not required to make a detriment finding because its order did not terminate visitation but continued to permit it on a monthly basis. The court did not abuse its discretion by reducing visits during the interim period between the six-month review hearing and the section 366.26 hearing.

### III. Disposition

The petition is denied.

_____

Mihara, J.

WE CONCUR:



_____

Bamattre-Manoukian, Acting P. J.




_____

Grover, J.






Moses R. v. Superior Court
H042404

10